CHARLES H. GILMAN *vs.* INHABITANTS OF PATTEN.

Penobscot.  Opinion January 7, 1879.*

*Demand,—evidence of.  Receipt.  Interest.  Stat. 1868, c. 225, construed.
Statute of limitations.*

A demand for his divisional share of money to be divided under Stat. 1868, c. 225, may be inferred from the fact that the soldier was at the office of the town treasurer to receive his dividend and gave his receipt therefor.

The receipt so given is open to explanation and to the correction of mistakes.

A soldier is entitled to interest on his share of the amount to be divided, after demand on the treasurer.

The amount paid to the town for "recruiting and other expenses" cannot be deducted from the amount received by the town under c. 225, and thereby diminish the share of the soldier.

Three years men, enlisting prior to July, 1862, are entitled to their share of the money received by the town under the reimbursement statute.

By Stat. 1868, c. 225, § 6, the amount received by the towns to be divided was to be paid out "to the soldiers who enlisted, or were drafted, and went any time during the war, or, if deceased, to their legal representatives."

Those enlisting under Stat. 1864, c. 227, are precluded by the terms of their enlistment, from claiming any additional bounty.

*Biggs v. Lee,* 61 Maine, 499, distinguished.

ON REPORT.

ASSUMPSIT to recover the sum which plaintiff says is now due him from defendant town, as his share of the funds paid by the state to defendant, under the equalization act of 1868, c. 225. Writ dated June 30, 1876.

The parties agreed that the town of Patten, on March 5, 1870, received from the state, under said act, $4,300 in bonds, and $75 in currency; the town having previously passed the vote in reference to the disposition of said funds, mentioned in section six of said act, and having seasonably furnished the copy of said vote therein called for.

That on March 28, 1870, at its annual meeting, under a sufficient article in the warrant therefor, the defendant town passed the following votes, viz:

I. "That the selectmen be authorized to divide the money

---

* The papers in this case came into the hands of reporter since the issuing of Vol. 69.

belonging to the soldiers according to their best skill and judgment, and in an equitable manner."

II. "That the money belonging to the soldiers in the treasury be divided on or before the first day of July, A. D. 1870."

That in June, 1870, the selectmen divided said $4,375, first deducting therefrom, as sums to which the town was entitled, by way of the reimbursement to the town, contemplated and provided for in said act, $1,420, the amount which the town had actually paid out as bounties during the war. Also the sum of $466.80 paid out by the town, and called, "recruiting and other war expenses," but not bounty money.

That the interest which had accrued on the bonds received by the town from the state, from their issue till their division by the town, was not included in the amount divided by the town, but was retained by the town in addition to the sums above named retained for purposes of reimbursement.

That the town of Patten had furnished on its own quotas but twenty-five men during the war who had no town bounty, all of whom were three years men.

That the plaintiff was one of the twenty-five so furnished; had received $100 state bounty; was drafted August 14, 1863, and was discharged July 16, 1865.

That so much of said money thus received by the town from the state as was divided as surplus, was made in the division into seventy-one shares and distributed in the following manner: To twenty-four three-years men, who enlisted prior to July, 1862, and not credited to any town, each one share; to nineteen three-years men who were on the town quota and had received town bounty, each one share; to twenty-five three-years men on the town quota who had received no town bounty, each one share; to three nine-months men on the town quota who had received town bounties, each one-fourth of a share.

That, according to said basis, the whole shares, sixty-eight in number, were each $36.33; and the one-fourth shares, three in number, were each $9.08.

That the sum of $36.33 thus assigned by the selectmen as plaintiff's share, was, on July 9, 1870, received by plaintiff from the

treasurer of defendant town, and that plaintiff thereupon gave to said treasurer a receipt, duly signed in form, as follows, viz :

" Patten, July 9, 1870. Received of the town of Patten, by hand of James S. Mitchell, treasurer, thirty-six dollars and thirty-three cents, being my share of moneys received from the state under the act for the equalization of the municipal war debt, and in full discharge and satisfaction for my claim against the town."

That in addition to whatever of demand may be inferred from what took place when plaintiff took money and gave receipt July 9, 1870, a demand was made in March, 1875. At the hearing at *nisi prius*, certain testimony was introduced by each party upon the question as to the circumstances under which the receipt was given.

The case is reported to the full court, with the understanding and agreement between the parties, that, if, upon the admissions of the parties, with so much of the annexed testimony as is legally admissible, plaintiff may maintain his action, there shall be judgment for plaintiff.

If, upon the same conditions, the plaintiff cannot maintain his action, then judgment shall be for defendants, excepting that, if, in the latter case, in the judgment of the court, the action is not maintainable on account of plaintiff's receipt given to the town treasurer, the action shall stand for trial upon the principles which the full court may apply to the other branches of the case.

The remaining facts appear in the opinion.

*W. H. McCrillis & J. Varney*, for the plaintiff.

*Wilson & Woodard*, for the defendants.

If plaintiff's original claim was legal, it has been satisfied, as evidenced by his receipt of July 9, 1870, unless impeached on the ground of fraud. R. S., c. 82, § 38. *Bisbee* v. *Ham*, 47 Maine, 543. *Percival* v. *Hichborn*, 56 Maine, 575.

The Stat. 1868 was blind. The plaintiff had the means of knowing all that the selectmen knew, and ratified the equitable division.

The fund was not a trust fund, but had all the elements of an ordinary legal claim of an individual against a town.

The cause of action accrued when the funds came from the state treasury to the town treasury, March 5, 1870. And the statute of limitations began to run when the plaintiff might have brought his action. 2 Chit. Con. (11 Am. ed.) 1228. *Hall* v. *Marston*, 17 Mass. 575. *Floyd* v. *Day*, 3 Mass. 403. *Coffin* v. *Coffin*, 7 Maine, 298. *Williams Coll.* v. *Balch*, 9 Maine, 74. *Stetson* v. *Harvey*, 31 Maine, 353. *Lewis* v. *Sawyer*, 44 Maine, 332. *Calais* v. *Whidden*, 64 Maine, 249.

The vote of the town of March 28, 1870, was more than six years before action brought; and if not, it does not recognize the claim of any particular soldier as a valid subsisting debt. *Page* v. *Frankfort*, 9 Maine, 115. *Harvey* v. *Tobey*, 15 Pick. 99. The votes merely refer the question of division to the selectmen for examination, as in *Fiske* v. *Needham*, 11 Mass. 452.

The plaintiff's right became vested by the vote prior to receipt of the money.

The schedule was a mere certificate of the acts of one official to another, and is not an acknowledgment or promise in writing. It was a history of their prior doings for his information. *Wellman* v. *Southard*, 30 Maine, 425. *Porter* v. *Hill*, 4 Maine, 41. *Deshon* v. *Eaton*, 4 Maine, 413. *Brown* v. *Edes*, 37 Maine, 313.

The payment was not enough to take the case out of the statute of limitations. 3 Par. Con. (5 ed.) 75, 76. *White* v. *Jordan*, 27 Maine, 370.

Counsel also cited *Riggs* v. *Lee*, 61 Maine, 499. *Canwell* v. *Canton*, 63 Maine, 304.

APPLETON, C. J. The plaintiff was drafted August 14, 1863, into the service of the United States, on the quota of the defendant town, and was discharged therefrom August 14, 1865, having received no town bounty.

The defendants, on March 5, 1870, received from the state treasurer $4,300 in bonds and $75 in currency, under the act of 1868, c. 227, the town having passed votes, " 1st. That the selectmen be authorized to divide the money belonging to the soldiers according to their best skill and judgment and in an equitable manner."

" 2d, That the money belonging to the soldiers in the treasury be divided on or before the first day of July, A. D. 1870."

The selectmen allowed the plaintiff $36.33, for which he gave the following receipt :

" Patten, July 9, 1870. Received of the town of Patten, by hand of James S. Mitchell, thirty-six dollars and thirty-three cents, being my share of moneys received from the state under the act for the equalization of the municipal war debt, and in full discharge and satisfaction for my claim against the town. Charles H. Gilman."

The writ in this case is dated June 30, 1876. The plaintiff seeks to recover a further sum in addition to that for which he gave his receipt. To this claim, and to the amount claimed, the defendants interpose various answers.

I. Reliance is placed on the statute of limitations. But that affords no bar.

On July 9, 1870, the plaintiff was at the treasurer's office to receive his dividend of the surplus to be divided. That he demanded it is necessarily inferrable from the receipt, for we cannot suppose the treasurer would pay without being asked.

Further, a special demand was made in March for the balance claimed.

II. It is claimed that the receipt given is an answer to the plaintiff's claim.

Had there been evidence that the receipt was given on condition that it was to be in full satisfaction, and, if not so accepted, it was not to be paid, it would have been a grave question whether the plaintiff could recover. But there is no evidence that such was the fact. The plaintiff says he did not know how much was due ; that, supposing this to be the true amount, he signed the receipt, not intending to discount anything to the town.

A receipt is always open to explanation. If the plaintiff, without fault, has received less than his due, he is entitled to recover whatever may be remaining due.

III. The money received was for the reimbursement of the town in accordance with the provisions of the act. The accruing interest belonged to them. The soldier can only claim interest after default of the town.

IV. In the division of the money received, after deducting $1,420 for bounty money paid, the town made a further deduction of $466.80 for " recruiting and other expenses."

But the last mentioned sum was " not actually paid out " as bounty, and therefore was not within the act of 1868, c. 228, to be deducted. It remains, therefore, the proper subject of division.

V. It is objected that twenty-four three years men who enlisted prior to July, 1862, and are not credited to any town, are not within the statute and are not entitled to any portion of the surplus.

But those who enlisted prior to July 1, 1862, without any bounty, are as much entitled to remuneration as those who subsequently enlisted in consideration of a bounty, greater or smaller, as the case may be, or those who, declining to enlist, were drafted into the national service against their wills. Assuredly no discrimination can equitably be made adverse to those who, without compulsion or expectation of bounty, enlisted at the first call made on their patriotism.

The statute of 1868, c. 225, sanctions no such unjust inequality.

The basis of reimbursement is fixed by section one, which provides that " each city, town and plantation shall receive and be reimbursed from the state one hundred dollars for every man furnished for the military service of the United States towards its quota for the term of three years, under the call of the president of July 2, 1862, and all subsequent calls, and in the same proportion for every man so furnished and accepted for any shorter period, in manner as is hereinafter provided." In determining the amount to be reimbursed to the town regard is to be had to the town quota.

But the money in the town treasury, what is to be done with it? This is determined by section six, which provides that the amount received, " or the surplus of the same above the amount actually paid out to the soldiers who enlisted or were drafted and went any time during the war, or, if deceased, to their legal representatives." The division of the money, it will be seen, is not based on the quota of the town. It is to be appropriated to those " who enlisted or were drafted and went any time during the

war." If there is any class of soldiers who especially deserve reward for their meritorious services, it is those who volunteered prior to the call of July, 2, 1862. They are within the express language of the act, and most emphatically within its equity.

The counsel for the plaintiff rely on case of *Riggs* v. *Lee*, 61 Maine, 499, as adverse to the views here advanced. But the question now under consideration was there neither raised, discussed, considered nor decided. There was no claim for soldiers who served prior to the date of July 2, 1862. The soldiers claiming their distributive share of the surplus were soldiers on the town's quota, and the decision is that those who served without receiving a bounty were entitled to recover their share of the surplus referred to in section six. It in no way negatives the equal or greater equities of the volunteers who went to the war prior to July 2, 1862.

The plaintiff, then, has no right to any portion of the surplus belonging to " twenty-four three years men, who enlisted prior to July 2, 1862."

VI. The money received under section one is at the rate of $100 for every three years man furnished and accepted, and in the same proportion for every man furnished and accepted for a shorter period. By section six towns furnishing no bounty, or less than $100, are entitled to the certificate provided by section three after they have voted to appropriate the " sum to which they would be entitled, or the surplus of the same above the sum paid out, to the soldiers who enlisted or were drafted and went any time during the war, or, if deceased, to their legal representatives." But how was this to be appropriated? So as to equalize bounties among them, or to increase the existing inequalities? We think so as to equalize, as far as may be, the town bounties. If A. has enlisted for three years and has received a town bounty of $50, he is not to come in for a share of the surplus until all those who have received no town bounty shall have received, regard being had to the length of enlistment, to the same extent, and then, all being on an equality, the balance is to be divided in proportion to the length of time served. It is, however, to be borne in mind that those who enlisted under the act of 1864, c.

227, are precluded by the terms of their enlistment from claiming any additional bounty. *Canwell* v. *Canton*, 63 Maine, 304.

> *Defendants defaulted, and*
> *to be heard in damages.*

WALTON, BARROWS, DANFORTH, PETERS and LIBBEY, JJ., concurred.